**SO ORDERED.**

**SIGNED this 25th day of June, 2012.**



Dale L. Somers
United States Bankruptcy Judge
_____

For on-line use but not print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| **BROOKE CORPORATION, et al.,** | CASE NO. 08-22786 |
| | JOINTLY ADMINISTERED |
| DEBTORS. | CHAPTER 7 |
| | |
| CHRISTOPHER J. REDMOND, Chapter 7 Trustee of Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc., | |
| PLAINTIFF, | |
| v. | ADV. NOS. 10-06162, 10-06198, 10-06201, 10-06204, and 10-06209 |
| Hull & Co., Inc. (Adv. No. 10-06162); Graham Rogers, Inc. (Adv. No. 10-06162); Allied Group, Inc. d/b/a Allied Mutual Insurance Company (Adv. No. 10-06198); Dairyland Insurance | |

| |
|---|
| Company (Adv. No. 10-06198); Explorer Insurance Company d/b/a ICW Group (Adv. No. 10-06198); Mendota Insurance Company (Adv. No. 10-06201); Peachtree Special Risk Brokers, LLC (Adv. No. 10-06204); Victoria Fire & Casualty Co. d/b/a Victoria Insurance Group d/g/a Titan Auto Insurance (Adv. No. 10-06209); United Underwriters, Inc. (Adv. No. 10-06209); and Universal Casualty Company (Adv. No. 10-06209), |
| DEFENDANTS. |

## MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS COMPLAINTS BASED UPON TRUST FUND DEFENSE

Numerous insurance companies named as defendants in several materially identical adversary complaints[1] filed by the Trustee of Debtors Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc. (collectively Debtors), move to dismiss the Complaints against them for preferential transfers, fraudulent transfers, and related claims by which the Trustee seeks to avoid and recover for the benefit of the Debtors' bankruptcy estates transfers made in payment of insurance premiums on policies written by agents of the Brooke family of companies. The Defendants contend that as a matter of law, the Trustee cannot prevail since the funds transferred by the Debtors to them were subject to statutory trusts and were not property in which the Debtors had an

---

[1] The adversary proceedings and the defendants whose motions to dismiss are under advisement are identified in the caption. The defendant taking the lead is the Allied Group, Inc., d/b/a Allied Mutual Insurance Company, a defendant in Adversary No. 10-6198. The additional moving defendants joined in the arguments of Allied. Allied appeared through Michele Craycroft of Fields and Brown, LLC, and Quintin F. Lindsmith and James P. Schuck of Bricker & Eckler LLP. The Trustee appeared by John J. Cruciani and Michael D. Fielding of Husch Blackwell LLP.

interest.[2] For the following reasons, the Court denies the motions to dismiss.

**THE COMPLAINTS**

Prepetition, the Debtors and approximately thirty other affiliated companies were engaged primarily in the business of selling insurance and related services.[3] Debtor Brooke Capital, a Kansas corporation, was an insurance agency and finance company that distributed insurance services through a network that, at one time, totaled nearly 900 franchisee- and company-owned locations.[4] Neither Debtors Brooke Corporation nor Brooke Capital had contracts with the insurance companies. Rather, Brooke Agency Services Company LLC (BASC), a bankruptcy-remote, special-purpose entity and wholly-owned subsidiary of Brooke Corporation, was the party to the Brooke contracts with the numerous insurance companies for which Brooke agents sold policies. Generally, BASC had the obligation to pay premiums owed by policy holders to the insurance companies on policies written by Brooke agents.

Under this franchise system, for most policies, Brooke agents collected the premiums from the policy holders on behalf of BASC. But neither the agents nor BASC

---

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, these matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F) and (H), and no party has objected to this Court hearing and finally adjudicating the matters. There is no objection to venue or jurisdiction over the parties.

[3] Case No. 08-22786, Dkt. 16, ¶ 6.

[4] *Id.* at ¶ 5.

3

retained the collected premiums in segregated accounts for transmittal to the insurance companies. Rather, the agents and BASC transferred the insurance premiums to the Brooke system for processing premiums. That system involved an interrelated web of bank accounts in the names of various Brooke-related entities in which the premiums owed to various insurance companies were commingled, not only with premiums owed to other companies, but also with Brooke operating funds and commission payments owed to Brooke. In addition, several of these accounts were frequently overdrawn. At times, even if the Brooke franchisees did not collect the premiums or failed to remit the premiums to Brooke, funds from Brooke accounts were processed as if they had been remitted by the agents. Rather than the payments to the insurance companies being made from BASC accounts, the premiums were transferred to the insurance companies from accounts of Brooke Capital, one of the Debtors. The Trustee alleges it is impossible to trace specific premium dollars collected from the point of receipt by a Brooke agent and deposit into the Brooke system to the point of payment from Brooke Capital to a specific insurance company.

The Trustee seeks to avoid premiums transferred to the Defendants by Brooke Capital prepetition. In the fraudulent transfer counts, the Trustee alleges that during the four-year period prior to the Debtors' bankruptcy filings, transfers were made to the Defendants for the payment of premiums from the accounts of Brooke Capital, property in which the Debtors had an interest. That interest is alleged to have arisen from Brooke Capital's control of the accounts, the commingling of premium deposits with other funds

4

of the Debtors, and the Debtors' use of their own funds to pay premiums on behalf of some agents. It is alleged that these transfers were not for or on account of a debt of Brooke Capital, since it was not obligated to remit premiums to the insurance companies, and Brooke Capital therefore did not receive reasonably equivalent value for the transfers. As an alternative to the fraudulent transfer claims, the Trustee seeks to avoid payments made within 90 days prepetition as preferential transfers. The Trustee alleges that if Brooke Capital had an obligation to transfer the funds to the Defendants (because when the premium payments from the Brooke agents were commingled with Brooke assets, the Defendants became unsecured creditors of the Debtors), the transfers were on account of antecedent debts. In addition to avoidance of the transfers, the Trustee also seeks to recover the transfers and to disallow proofs of claim filed by the Defendants.

**THE MOTIONS TO DISMISS**

The Defendants move to dismiss on the basis that as a matter of law, the Debtors had no interest in the property transferred as premium payments. They allege the premiums remained property of the Defendants' policyholders, and Brooke held the premium payments in trust for the benefit of the Defendants. This defense relies upon fundamental principles of avoidance law under the Bankruptcy Code, and upon state law that deems insurance premiums collected by insurance agents to be held in trust. Section 548(a)(1),[5] the fraudulent transfer section of the Code, provides for the avoidance of a

---

[5] 11 U.S.C. § 548(a)(1). All references in the text to title 11, the Bankruptcy Code, shall be to the section number only.

transfer "of an interest of the debtor in property." Likewise, § 547(b), addressing preferential transfers, provides for the avoidance of a transfer "of an interest of the debtor in property." But § 541(d) excludes from the estate any property in which the debtor has no equitable interest, which includes property held in trust.[6] A Kansas statute, K.S.A. 2011 Supp. 40-247, provides that an insurance agent receiving any money or property as a premium for a contract of insurance is deemed to hold such property in trust. Therefore, since Kansas law deems collected premiums to be held in trust and Brooke Capital's transfers to the Defendants were for payment of insurance premiums owed by the policy holders, the transfers were of trust property in which the Debtors had no interest. According to the Defendants, based upon *Begier v. Internal Revenue Service*,[7] a Supreme Court case addressing trust-fund taxes, Brooke Capital's payment of premiums to the Defendants identified the funds transferred as trust funds, without the necessity of tracing. The Defendants submit that because the transfers were of trust funds, the claims for fraudulent conveyances and preferential transfers fail to state claims upon which relief can be granted, the related claims for turnover of the avoided transfers must be dismissed, and the claims for disallowance of proofs of claim should be dismissed as moot.

    The Trustee responds that tracing would be required to establish that the funds transferred to the Defendants prepetition were subject to a statutory trust and thereby excluded from the Debtors' property interests. Since the specific payments have not been

---

[6] 496 U.S. 53, 59 (1990).

[7] *Id.*

6

traced to the accounts from which the transfers were made to the Defendants, the Trustee submits that the motions to dismiss fail. The Trustee makes additional arguments in support of his opposition to dismissal, including arguments that the allegations of the Complaints satisfy the plausibility standard of *Iqbal*[8] and that, because the payments of premiums to the Defendants were made with money that had been commingled with the Debtors' own funds and were paid to the Defendants from a Brooke Capital deposit account, the Debtors' interest in the property transferred is sufficiently alleged. But because the motions to dismiss are premised upon a question of law and the Court concludes that tracing, which the Defendants have not undertaken, is required to identify moneys transferred to the Defendants in payment of premiums as statutory trust funds, the Court does not address these and other contentions of the Trustee in opposition to the motions to dismiss.

**ANALYSIS**

The determinative question posed by the motions to dismiss is whether the transfers in payment of premiums owed on policies written by Brooke agents were of trust funds, excluded by § 541(d) from property of the Debtors' bankruptcy estates. As the basis for the alleged trust, all the Defendants except one, Explorer Insurance Company,[9] rely upon K.S.A. 2011 Supp. 40-247(a).[10] It provides in part:

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[9] Explorer states it sold auto insurance in California, not Kansas. Case No. 10-6198, Dkt. 96 at 2. Although it essentially concedes that K.S.A. 2011 Supp. 40-247 does not apply to premiums collected on its behalf, it nevertheless relies upon the trust fund defense asserted by the other Defendants based upon a

> (a) An insurance agent or broker who acts in negotiating or renewing or continuing a contract of insurance including any type of annuity by an insurance company lawfully doing business in this state, and who receives any money or substitute for money as a premium for such a contract from the insured, whether such agent or broker shall be entitled to an interest in same or otherwise, shall be deemed to hold such premium in trust for the company making the contract. If such agent or broker fails to pay the same over to the company after written demand made upon such agent or broker, less such agent's or broker's commission and any deductions, to which by the written consent of the company such agent or broker may be entitled, such failure shall be prima facie evidence that such agent or broker has used or applied the premium for a purpose other than paying the same over to the company.

When ruling on the motions to dismiss, the Court will assume, without deciding the question, that under K.S.A 2011 Supp. 40-247, at least a portion of the insurance premiums collected from the Defendants' policyholders by Brooke agents should be deemed to be held in trust.[11] This is a reasonable assumption. The Defendants contend

---

provision of the California Insurance Code, Cal. Ins. Code § 1733, which states: "All funds received by any person acting as a licensee under this chapter . . . as premium or return premium on or under any policy of insurance or undertaking of bail, are received and held by that person in his or her fiduciary capacity." According to Explorer's counsel, this statute imposed a statutory trust on premiums Brooke collected for it. Case No. 10-6198, Dkt. 96 at 2. For purposes of this opinion, the Court will assume that Explorer is correct and that a statutory trust similar to that in Kansas applied to insurance premiums collected by Brooke agents or brokers for Explorer policies. The Court's analysis will therefore focus exclusively upon the Kansas statute.

[10] Subsection (b) defines a violation of subsection (a) to be a felony or a misdemeanor, depending upon the amount of premium not paid to the company.

[11] In doing so, the Court is not precluding the Trustee from contesting the applicability of K.S.A. 2011 Supp. 40-247 during the future course of this litigation. Several possible reasons for such a conclusion appear in the pleadings before the Court. For example, there is an issue of which state's law is applicable to Brooke's dealings with the various insurance companies, and the possibility that the applicable law could be determined by contracts which are not presently before the Court. The Trustee alleges that on some occasions when agents failed to collect premiums or agents collected premiums but

8

that they are insurance companies "lawfully doing business in Kansas." The parties agree that Brooke franchisees and their agents were engaged in the business of selling insurance and acted as brokers[12] or agents for the Defendants. Making this assumption allows the Court to focus on what it finds to be the controlling issue of law presented by the motions to dismiss: Assuming that Brooke agents collected premiums from the Defendants' policyholders, that such premiums were deemed by state law to be held in trust, and that the premium payments were hopelessly commingled with other Brooke funds, were the Debtors' transfers of the funds to the Defendants sufficient to identify the funds as trust property, without the need for common-law tracing.

The Defendants assert that for a statutory trust, such as the trust in insurance premiums that is deemed to exist under K.S.A. 2011 Supp. 40-247, the nexus between the trust res and the transfers to the insurance companies is established by the voluntary act of payment, without the necessity of tracing that is required to identify the res of a common-law express or constructive trust. The primary authority relied upon is the Supreme Court's *Begier*[13] opinion. In *Begier,* the Court considered whether prepetition payments

---

did not deposit them to Brooke for processing, Brooke used its own funds to make premium payments to insurance companies. K.S.A. 2011 Supp. 40-247 may not apply to such payments. In addition, the Trustee contends, assuming that K.S.A. 2011 Supp. 40-247 applies, the Defendants have by their conduct waived the requirement that the funds be held in trust.

[12] Under Kansas law, "'an insurance broker is one who acts as a middleman between the insured and the insurer; one who solicits contracts from the public under no employment from any special company.'" *Rosedale Securities Co. v. Home Ins. Co.*, 120 Kan. 415, 418, 243 P.1023, 1023 (1926) (*quoting* 9 *Corpus Juris.* 509).

[13] 496 U.S. 53.

9

of withholding and excise taxes (commonly referred to as trust-fund taxes) to the Internal Revenue Service (IRS) from the debtor's general operating account could be avoided and recovered as preferential. The issue was whether the money transferred was property that the debtor held in trust for the IRS. The analysis began with 26 U.S.C. § 7501, the Internal Revenue Code's trust-fund provision, which provided: "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the *amount of tax* so collected or withheld shall be held to be a special fund in trust for the United States."[14] Based upon the statutory scheme for collection of taxes, the Court rejected segregation of the funds as a prerequisite to the creation of a trust in "the amount of tax." Thus, a § 7501 trust was created at the moment when the relevant payments were made. But that statutory scheme did not answer the question whether the particular dollars that the debtor paid to the IRS from its general operating account were "property of the debtor" or were assets belonging to the statutory trust.[15] Because § 7501 created "a trust in an abstract 'amount' — a dollar *figure* not tied to any particular assets — rather than in the actual dollars withheld,"[16] the statutory scheme was identified as "radically different from the common-law paradigm,"[17] and the common-law tracing rules for identifying particular property held in trust were found to

---

[14] *Id*. at 60 (emphasis supplied).

[15] *Id*. at 62.

[16] *Id*.

[17] *Id*.

10

be unhelpful.[18]  The Court therefore turned to the legislative history of the Bankruptcy Code regarding the exclusion of trust-fund taxes from the bankruptcy estate.  That history evidenced that Congress expected the IRS would have to show some connection between the § 7501 trust and the assets sought to be applied to the debtor's trust-fund tax obligation.  As to that connection, the Court held that "[t]he debtor's act of voluntarily paying its trust-fund tax obligation . . . is alone sufficient to establish the required nexus between the 'amount' held in trust and the funds paid."[19]

The Defendants exaggerate the applicability of *Begier* when arguing that there is a general rule that tracing is not required for statutory trusts.  Several cases cited by the Defendants in support of applying *Begier* to this case concern the creation of a statutory trust, not the nexus required between payments sought to be avoided by a bankruptcy trustee and the trust res.[20]  The Defendants do cite cases where the *Begier* rule of nexus by payment has been applied to statutory trusts for the benefit of governmental entities,[21] but cite no cases where the rule has been applied for the benefit of a private entity.  The

---

[18] *Id*. at 62-63.

[19] *Id*. at 66-67.

[20] *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3rd Cir. 1994) (where municipality moved for order for turnover of taxes withheld by Chapter 11 debtor prepetition, court held express trust was created but remanded question whether nexus was established between money in debtor's account and withheld taxes); *Owner Operator Indep. Drivers Ass'n, Inc., v. Comerica Bank (In re Arctic Express Inc.)*, 636 F.3d 781 (6th Cir. 2011) (regulations created trust; tracing not an issue).

[21] *Suwannee Swifty Stores, Inc., v. Georgia Lottery Corp. (In re Suwanne Swifty Stores, Inc.)*, 266 B.R. 544 (Bankr. M.D. Ga. 2001) (revenues from sales of lottery tickets); *Wasden v. Florida Dept. Of Revenue (In re Wellington Foods, Inc.)*, 165 B.R. 719 (Bankr. S.D. Ga. 1994) (federal withholding taxes).

11

Defendants also rely upon cases deviating from the common-law tracing rules where trust funds initially dissipated or commingled were restored, thereby negating the need for tracing.[22] That circumstance is not present here. Cases where government regulations dispensed with the tracing requirement[23] also are not helpful. The Defendants cite no cases arising in circumstances similar to this case where payment alone was found to be sufficient to identify trust property for purposes of excluding it from the estate under § 541(d).

In the Tenth Circuit prior to *Begier*, tracing was required when a trust beneficiary sought to recover trust assets.[24] The lowest intermediate balance test was applied to identify trust property in commingled accounts in the debtor's possession prior to the date of filing.[25] Subsequent to *Begier*, the Tenth Circuit has adhered to this rule. "'[A]ny party seeking to impress a trust upon funds for purposes of exemption from a bankrupt

---

[22] *Kupetz v. United States (In re California Trade Technical Schools, Inc.)*, 923 F.2d 641 (9th Cir. 1991) (under California law, debtor's repayment of federal student assistance program monies could be considered trust funds even if they could not be traced); *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838 (6th Cir. 2002) (under Tennessee law, funds held in escrow for clients in commingled trust account without tracing as to individual clients were subject to express trust and repayment from debtor's general funds to restore portion of monies previously converted from trust were not debtor's property); *Suwanne Swifty Stores, Inc.)*, 266 B.R. 544 (commingled lottery funds restored to trust account to satisfy lottery corporation's weekly sweep conclusively presumed to be trust property).

[23] *C & E Enterprises, Inc., v. Milton Poulus, Inc. (In re Milton Poulos, Inc.)*, 94 B.R. 648 (Bankr. C.D. Cal. 1988) (applying regulations implementing Perishable Agricultural Commodities Act).

[24] *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.)*, 817 F.2d 682, 684 (10th Cir. 1987).

[25] *Id.* at 684-85.

12

estate must identify the trust fund in its original or substituted form.'"[26] There are no Tenth Circuit opinions adopting the nexus test in lieu of common-law tracing.

Generally, *Begier* has been narrowly construed by the courts. There is no basis to predict that the Tenth Circuit would do otherwise. As the Ninth Circuit Court of Appeals has said,

> The exception to the common law treatment of trusts elaborated in *Begier*, was justified by the language and purpose of § 7501. . . .
> Nor should we extend the holding of *Begier* more broadly than is necessary to accomplish its purposes when doing so necessarily undermines the Bankruptcy Code's core principle of equality of distribution among creditors.[27]

Similarly, a bankruptcy court has stated,

> In establishing the nexus test in *Begier*, the Supreme Court deviated from the long-standing LIBT [lowest intermediate balance test] due to the unique facts and circumstances raised by the specific type of trust at issue in the case. As such, the holding in *Begier* should be narrowly construed and the nexus test should only apply in cases where a court is faced with facts similar to those in *Begier*.[28]

Subsequent to *Begier*, courts have required tracing to identify commingled funds which,

---

[26] *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Assocs., Inc.)*, 48 F.3d 470, 474 (10th Cir. 1995) (*quoting First Federal of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir.1989)).

[27] *Wyle v. S & S Credit Co. (In re Hamilton Taft & Co.)*, 53 F.3d 285, 289-290 (9th Cir. 1995), *case settled and decision vacated as moot*, 53 F.3d 337 (1995).

[28] *Official Comm. Of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.),* 432 B.R. 135, 151 (Bankr. D. Del. 2010).

13

pursuant to statute, should have been held in trust.[29]

The Court declines to apply the *Begier* Court's rejection of common-law tracing to the circumstances of this case. The alleged statutory trust of insurance premiums bears no similarity to the § 7501 trust for trust-fund taxes. Unlike the § 7501 trust, which is a trust for the *amount* of trust-fund taxes, the insurance premium statutory trust under K.S.A. 2011 Supp. 40-247 is a trust comprised of the "*money or substitute for money*" collected. Like a common-law express or constructive trust, the res of the insurance premium trust is specific property, not an amorphous amount collected. Contrary to the Defendants' suggestion, *Begier* does not stand for the general proposition that for statutory trusts, identification to the purpose of the trust by payment is a substitute for tracing. The Supreme Court's rationale for this minimal nexus was legislative history supporting the view that Congress intended to protect the prepetition payment of trust-fund taxes from avoidance actions. There is no such history for K.S.A. 2011 Supp. 40-257.

To apply the *Begier* nexus test in this case would be contrary to the central bankruptcy policy of equality of distribution to creditors,[30] which is facilitated by the preference and fraudulent transfer provisions of the Code. For example, assume that shortly before filing, Brooke agents had collected $10,000 in premiums from

---

[29] *Meoli v. Kendall Electric, Inc. (In re R.W. Leet Electric, Inc.),* 372 B.R. 846, 853-59 (6th Cir. BAP 2007) (tracing required to sustain defense to preference avoidance that transfers were from funds held in trust under Michigan Building Contract Fund Act); *Appalachian Oil Co., Inc. v. Virginia State Lottery Dep't (In re Appalachian Oil Co., Inc.)*, 2012 WL 1067699, *10-13 (Bankr. E.D. Tenn. 2012) (rejecting assertion of Virginia Lottery that voluntary payment established nexus between funds required by statute to be held in trust and payments from commingled funds).

[30] *Begier*, 496 U.S. at 58.

14

policyholders for each of fifty insurance companies, that the $500,000 of premiums had been transferred to Brooke Capital and commingled with Brooke's operating funds from other sources, that several of the insurance company creditors had been owed past-due premiums in an amount in excess of $500,000 each, and that Brooke Capital had paid one of those companies $300,000 and had paid its trade creditors the remaining funds. If the Trustee brought a preference action against the recipient of the $300,000 and the Defendants' theory prevailed, the transferee insurance company could successfully defend the action by claiming that the funds transferred had been trust funds because of the nexus created by the act of paying premiums that had been due. The Trustee would be thwarted in efforts to recover a preferential payment which clearly preferred one insurance company creditor over others.

In addition, requiring tracing to identify the res of a statutory trust of insurance premiums is consistent with the wording of the Kansas statute. K.S.A. 2011 Supp. 40-247(a) defines the trust res to be the specific "money or substitute for money" collected by the agent or broker.[31] Although K.S.A. 2011 Supp. 40-247 and its predecessors have

---

[31] A leading commentator on insurance law, when addressing the duty of agents to account to the insurer for premiums, notes that tracing is required.

> In some states the rule is followed, primarily by virtue of express statutory provision, that the agent receives premiums as a trust fund, so that the insurer is entitled to greater remedies than would be available against an ordinary debtor and is allowed to assert a lien upon any bank account *into which the insurer can trace the premiums*, and to a priority against the estate of an insolvent agent.

4 Couch on Insurance, § 54:5 (3rd ed., database updated through Nov. 2011) (emphasis added), available on Westlaw at COUCH § 54:5.

been construed primarily in criminal litigation, there is one garnishment case in which tracing was used to identify the trust property. In *Meixner v. Heusser*,[32] Meixner, a judgment creditor of Heusser, an insurance agent, attached Heusser's bank account. An unpaid insurer intervened. The trial court discharged the garnishment based upon evidence that the monies in the account were insurance premiums collected by Heusser, but not yet remitted to the insurance company. Although the specific method of tracing was not discussed, the Kansas Supreme Court affirmed, finding the evidence sufficient "to show that the sum in the bank account at the time of the garnishment was made up of insurance premiums collected, was in fact a trust fund, within the meaning of the statute, . . . and within the meaning of the agency contract, and did in fact belong to the interpleading insurer."[33]

Subsequent to this matter being placed under advisement and the initial drafting of this Memorandum Opinion, District Judge Lungstrom issued a Memorandum and Order addressing the trust fund defense in *Redmond v. Progressive Corporation*,[34] a Brooke adversary proceeding substantially identical to these cases, but for which reference was withdrawn from this Court. Judge Lungstom, like this Court, rejected the defense. He stated,

> Thus, the vital element from *Begier* that distinguished its

---

[32] 153 Kan. 558, 112 P.2d 103 (1941).

[33] *Id.*, 153 Kan. at 559, 112 P.2d at 104.

[34] *Redmond v. Progressive Corp. (In re Brooke Corp.)*, 2012 WL 2120736 (June 12, 2012).

16

statutory trust from other common-law trusts — a trust involving an "amount" instead of a specific trust res — is not present here. Thus, there is no basis to alter the usual rules that would govern commingled trust funds. Moreover, the *Begier* Court's rule about voluntary payments providing the necessary nexus to the original trust funds was based on specific legislative history relating to Section 7501, and defendant has not identified any similar legislative history applicable to the present case. Thus, *Begier*'s limited holding, applying specifically to trust-fund taxes, would not apply to this case.[35]

**CONCLUSION.**

For the foregoing reasons, the Court denies the Defendants' motions to dismiss premised upon the trust fund defense. The nexus rule of *Begier*, under which statutory trust-fund taxes paid from commingled funds were sufficiently identified by the debtor's act of payment, does not apply to the statutory trusts of insurance premiums alleged to have arisen in these cases.

**IT IS SO ORDERED.**

# # #

---

[35] *Id*. at *4.